# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
## No. 18-1507V
## UNPUBLISHED

|  |  |
|---|---|
| MAURA MCAULIFFE,<br><br>               Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>               Respondent. | Chief Special Master Corcoran<br><br>Filed: February 18, 2020<br><br>Special Processing Unit (SPU);<br>Findings of Fact; Onset; Influenza<br>(Flu) Vaccine; Shoulder Injury<br>Related to Vaccine Administration<br>(SIRVA) |

*Leah VaSahnja Durant*, Law Offices of Leah V. Durant, PLLC, Washington, DC, for Petitioner.

*Sarah Christina Duncan*, U.S. Department of Justice, Washington, DC, for Respondent.

## FINDINGS OF FACT[1]

On September 28, 2018, Maura McAuliffe filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that she suffered a left shoulder injury related to vaccine administration ("SIRVA") as a result of an influenza ("flu") vaccine administered on October 27, 2014. Petition at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters.

---

[1] Because this unpublished decision contains a reasoned explanation for the action in this case, I am required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all "§" references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

For the reasons discussed below, I find the onset of Petitioner's SIRVA occurred within 48 hours of vaccination. Specifically, Petitioner suffered pain within 48 hours of vaccination

## I. Relevant Procedural History

Following the initial status conference held on December 20, 2018, Respondent was ordered to file a status report indicating how he intends to proceed in this case. ECF No. 13.

On September 6, 2019, Respondent filed a Rule 4(c) Report and Motion to Dismiss. ECF Nos. 21-22. Respondent asserted that Petitioner's injury was not consistent with a SIRVA because she had not established onset of shoulder pain within 48 hours of the vaccination. Res. Report at 8. Respondent noted that Petitioner had alleged worsening pain that started "upon injection" and subsequently affected her ability to perform activities of daily living. *Id.* at 8-9. However, Respondent argued that Petitioner's January 2015 trip to Puerto Rico and delay in seeking treatment were inconsistent with the aforementioned allegations. *Id.*

Respondent argued that, "[l]acking evidence to support a Table injury for SIRVA, [P]etitioner cannot allege a claim for actual causation in the alternative utilizing the 'lookback' provision in Section 16(b) of the Vaccine Act." *Id.* at 9. Respondent moved to dismiss this case because Petitioner "is time-barred from filing a vaccine injury claim for her October 27, 2014 flu vaccination based on actual causation." *Id.* at 11.

On September 20, 2019, Petitioner filed a Response to Respondent's Motion to Dismiss. ECF No. 23. Petitioner noted that the record is "replete with information documenting that [P]etitioner's shoulder pain was temporally associated with the flu vaccination she received." *Id.* at 2. Petitioner argued that Respondent's Motion should be denied because there is a factual dispute between the parties. *Id.* at 2-3.

On November 21, 2019, a Scheduling Order was issued noting that I had reviewed the evidence filed to date in this case. ECF No. 24. I stated that briefing and a hearing were not necessary to make a finding of fact regarding the onset of Petitioner's alleged injury. *Id.* A deadline was set for Petitioner to file any outstanding medical records and other relevant evidence she wished to have considered regarding this issue. *Id.*

On January 5, 2020, Petitioner filed additional medical records, a supplemental affidavit, as well as affidavits from Mark McAuliffe (her husband) and John Davis (her brother). ECF No. 25. Petitioner filed an amended Statement of Completion on January 30, 2020. ECF No. 26. Accordingly, this matter is now ripe for adjudication.

## II. Issue

At issue is whether Petitioner's first symptom or manifestation of onset after vaccine administration (specifically pain) occurred within 48 hours, as required by the Vaccine Injury Table and Qualifications and Aids to Interpretation ("QAI") for a Table

SIRVA. 42 C.F.R. § 100.3(a) XIV.B. (2017) (influenza vaccination); 42 C.F.R. § 100.3(c)(10)(ii) (required onset for pain listed in the QAI).

### III.     Authority

Pursuant to Vaccine Act § 13(a)(1)(A), a petitioner must prove, by a preponderance of the evidence, the matters required in the petition by Vaccine Act § 11(c)(1).  A special master must consider, but is not bound by, any diagnosis, conclusion, judgment, test result, report, or summary concerning the nature, causation, and aggravation of petitioner's injury or illness that is contained in a medical record. Section 13(b)(1).  "Medical records, in general, warrant consideration as trustworthy evidence.  The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions.  With proper treatment hanging in the balance, accuracy has an extra premium.  These records are also generally contemporaneous to the medical events." *Curcuras v. Sec'y of Health & Human Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

Accordingly, where medical records are clear, consistent, and complete, they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Human Servs.*, No. 03-1585V, 2005 WL 6117475, at *20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005).  However, this rule does not always apply.  In *Lowrie*, the special master wrote that "written records which are, themselves, inconsistent, should be accorded less deference than those which are internally consistent." *Lowrie*, at *19.

The United States Court of Federal Claims has recognized, however, that "medical records may be incomplete or inaccurate." *Camery v. Sec'y of Health & Human Servs.*, 42 Fed. Cl. 381, 391 (1998).  The Court later outlined four possible explanations for inconsistencies between contemporaneously created medical records and later testimony: (1) a person's failure to recount to the medical professional everything that happened during the relevant time period; (2) the medical professional's failure to document everything reported to her or him; (3) a person's faulty recollection of the events when presenting testimony; or (4) a person's purposeful recounting of symptoms that did not exist. *La Londe v. Sec'y of Health & Human Servs.*, 110 Fed. Cl. 184, 203-04 (2013), *aff'd*, 746 F.3d 1335 (Fed. Cir. 2014).

Medical records may also be outweighed by testimony that is given later in time that is "consistent, clear, cogent, and compelling." *Camery*, 42 Fed. Cl. at 391 (citing *Blutstein v. Sec'y of Health & Human Servs.*, No. 90-2808, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998).  The credibility of the individual offering such testimony must also be determined. *Andreu v. Sec'y of Health & Human Servs.*, 569 F.3d 1367, 1379 (Fed. Cir. 2009); *Bradley v. Sec'y of Health & Human Servs.*, 991 F.2d 1570, 1575 (Fed. Cir. 1993).

A special master may find that the first symptom or manifestation of onset of an injury occurred "within the time period described in the Vaccine Injury Table even though the occurrence of such symptom or manifestation was not recorded or was incorrectly

recorded as having occurred outside such period." § 13(b)(2). "Such a finding may be made only upon demonstration by a preponderance of the evidence that the onset [of the injury] . . . did in fact occur within the time period described in the Vaccine Injury Table." *Id.*

The special master is obligated to fully consider and compare the medical records, testimony, and all other "relevant and reliable evidence contained in the record." *La Londe*, 110 Fed. Cl. at 204 (citing § 12(d)(3); Vaccine Rule 8); *see also Burns v. Sec'y of Health & Human Servs.*, 3 F.3d 415, 417 (Fed. Cir. 1993) (holding that it is within the special master's discretion to determine whether to afford greater weight to medical records or to other evidence, such as oral testimony surrounding the events in question that was given at a later date, provided that such determination is rational).

### IV.  Finding of Fact

For the reasons discussed below, I find that the onset of Petitioner's left shoulder pain occurred within 48 hours of vaccination. I make this finding after a complete review of the record to include all medical records, affidavits, Respondent's Rule 4(c) Report, and additional evidence filed. Specifically, I base this finding on the following evidence:

- On October 27, 2014, Petitioner was administered a flu vaccine in her left arm. Petitioner's Exhibit ("Pet. Ex.") 1 at 1.

- On February 10, 2015 (over three months post-vaccination), Petitioner called Norwood Internal Medicine to report that she had experienced an "intensiely [sic] sore arm" since her flu shot. Pet. Ex. 8 at 168. Petitioner added that she had experienced daily soreness as well as pain with lifting and movement. *Id.* Petitioner was advised to schedule an appointment. *Id.* at 169.

- On February 12, 2015, Petitioner presented to Sung Anderson, M.D., with complaints of left upper arm pain since her flu shot. *Id.* at 136. Petitioner noted that her symptoms "started on the day when she got the flue [sic] shot." *Id.* at 137.

- On February 17, 2015, Petitioner presented to Andrew Chapman, M.D., with complaints of "ongoing left upper arm pain." *Id.* at 132. Petitioner stated that her symptoms dated back to around October. *Id.* Petitioner specified that she had received "her usual annual flu shot and had the usual achy sort of post[-]injection discomfort, which [had] just not gone away." *Id.* Petitioner denied any history of injury. *Id.* at 133. On examination, Petitioner presented with tenderness of the anterior joint line, reduced shoulder range of motion with pain, and negative Hawkin's, Yergason's, Speed's, and O'Brien's testing. *Id.* Petitioner was diagnosed with adhesive capsulitis and referred to physical therapy. *Id.* at 134.

4

- On March 4, 2015, Petitioner presented to Sports & Orthopedic Physical Therapy, Inc., for an initial examination.  Pet. Ex. 4 at 3.  Petitioner stated that she "noticed [left] shoulder pain after a flu injection in [October 2014]" that grew progressively worse.  *Id.*

- On December 20, 2018, Petitioner filed an affidavit in support of her Petition, averring that she experienced pain and stinging immediately following her vaccination, along with achiness that continued over several days. Pet. Ex. 14 at ¶ 4.  At the time, Petitioner presumed that these symptoms represented routine post-vaccination pain.  *Id.*  However, Petitioner stated that she continued to have pain over the following months, which led to limitations on her ability to perform activities of daily living.  *Id.* at ¶ 5.  Petitioner recalled that her sister eventually urged her to seek medical care in January 2015 after Petitioner was observed to have difficulty handling luggage on a trip to Puerto Rico.  *Id.* at ¶ 6.

- On January 5, 2020, Petitioner filed a supplemental affidavit.  Pet. Ex. 20.  Petitioner reiterated that she experienced pain, stinging, and achiness immediately after her vaccination.  *Id.* at ¶ 4.  Petitioner recalled that she woke up the morning following her vaccination with "a very heavy and sore arm" and had difficulty getting dressed.[3]  *Id.* at ¶ 6.  Petitioner averred that her pain continued over the subsequent weeks and months, which led to limitations on her ability to play golf, care for her daughter, sleep, exercise, complete household tasks, and perform other activities of daily living.  *Id.* at ¶¶ 7-8, 10-12.

- On January 5, 2020, Petitioner also filed an affidavit from Mark McAuliffe, her husband. Pet. Ex. 21.  Mr. McAuliffe recalled that Petitioner complained of a sore arm the evening of the October 27, 2014 vaccination.  *Id.* at ¶ 3.  According to Mr. McAuliffe, Petitioner woke up the next morning with pain when she attempted to lift her arm.  *Id.* at ¶ 4.  Over the following days, Mr. McAuliffe noted that Petitioner's symptoms caused difficulties performing activities of daily living.  *Id.* at ¶¶ 5-8.

- On January 5, 2020, Petitioner also filed an affidavit from John Davis, her brother.  Pet. Ex. 22.  Mr. Davis recalled a visit to Petitioner's home on October 29, 2014, during which Petitioner told him that "her arm was sore from a flu shot she had received two days prior."  *Id.* at ¶¶ 3-4.

---

[3] In addition, on November 11, 2019 (albeit after the filing of this action), Petitioner presented to Brigham and Women's Hospital for an orthopedic appointment.  Pet. Ex. 18 at 1.  Petitioner noted that she had received a flu shot five years earlier and had "woke up the next morning with an inability to move her left arm."  *Id.*  Petitioner stated that she continued to experience symptoms over the following months.  *Id.*

5

I find Petitioner's affidavits to be credible and consistent with the contemporaneously created treatment records.  Indeed, at her <u>first</u> post-vaccination medical appointment, Petitioner specifically tied her left arm pain to the vaccination and noted that her pain had begun <u>the day of her vaccination</u>.  Pet. Ex. 8 at 136-37.  At subsequent medical encounters, Petitioner continued to tie her symptoms to the vaccination with onset of pain occurring shortly thereafter.  *See, e.g.*, Pet. Exs. 8 at 132; 18 at 1.

In his Rule 4(c) Report, Respondent noted that Petitioner has alleged persistent, worsening pain that started "upon injection" and subsequently affected her ability to perform activities of daily living.  Res. Report at 8-9.  Respondent argued that Petitioner's January 2015 trip to Puerto Rico and delay in seeking treatment are inconsistent with the aforementioned allegations.  *Id.*  I do not find Respondent's arguments to be persuasive.

As an initial matter, Respondent has not adequately articulated how a trip to Puerto Rico in January 2015 would preclude a finding that the onset of Petitioner's shoulder pain occurred within 48 hours of the October 27, 2014 vaccination.  In the period following her vaccination, Petitioner alleged some (moderate) limitations on her activities of daily living; however, I find no evidence to suggest these limitations would have prevented Petitioner from making the aforementioned trip.  Respondent's arguments on this point are more relevant to the issue of potential damages for Petitioner's alleged SIRVA.

Moreover, although Petitioner did not seek treatment for her left shoulder injury until approximately three months following the October 27, 2014 vaccination, I do not find this delay to appreciably undermine her contention of an earlier onset.  Indeed, Petitioner's medical records and affidavits reflect a pattern similar to other SIRVA claims, in which injured parties reasonably delay treatment, often based on the assumption that their pain is likely transitory.  *See, e.g.*, *Larish v. Sec'y of Health & Human Servs.*, 18-20V, 2019 WL 5266886, at *6-10 (Fed. Cl. Spec. Mstr. Jul. 2, 2019) (finding onset of shoulder pain within 48 hours of vaccination despite a nine-week delay in treatment because petitioner's medical records recorded immediate post-vaccination pain); *Tenneson v. Sec'y of Health & Human Servs.*, No. 16-1664V, 2018 WL 3083140, at *5 (Fed. Cl. Spec. Mstr. Mar. 30, 2018) (finding a 48-hour onset of shoulder pain despite a nearly six-month delay in seeking treatment), *motion for review denied*, 142 Fed. Cl. 329 (2019); *Williams v. Sec'y of Health & Human Servs.*, 17-830V, 2019 WL 1040410, at *9 (Fed. Cl. Spec. Mstr. Jan. 31, 2019) (noting a delay in seeking treatment because petitioner underestimated the severity of her shoulder injury); *Knauss v. Sec'y of Health & Human Servs.*, 16-1372V, 2018 WL 3432906 (Fed. Cl. Spec. Mstr. May 23, 2018) (noting a three-month delay in seeking treatment).

Accordingly, I find there is preponderant evidence to establish that the onset of Petitioner's left shoulder pain occurred within 48 hours of the October 27, 2014 flu vaccination.

**V.      Scheduling Order**

Respondent shall file a status report, by no later than **Thursday, March 19, 2020**, indicating whether he is interested in exploring an informal resolution of Petitioner's claim.

**IT IS SO ORDERED.**

**s/Brian H. Corcoran**
Brian H. Corcoran
Chief Special Master
